Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4830 | **DATE** | 6/13/2001 |
| **CASE TITLE** | William D. Winterstein vs. CrossCheck, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 6/29/2001 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant Cross Check's motion for summary judgment (Doc. No. 7-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 23 |
| | Mail AO 450 form. | FILED FOR DOCKETING 01 JUN 13 PM 3:15 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/13/2001 date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM D. WINTERSTEIN, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 00 C 4830 |
| v. | ) ) | Judge Rebecca R. Pallmeyer |
| CROSSCHECK, INC., a California corporation, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William D. Winterstein, individually and on behalf of all others similarly situated, has brought this action against Defendant CrossCheck under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* (hereinafter "FDCPA"). Winterstein seeks a declaration that CrossCheck's form debt collection letter violates the FDCPA, and an award of damages for CrossCheck's violations of the FDCPA. CrossCheck now moves for summary judgment, arguing that CrossCheck is not a "debt collector" within the meaning of the FDCPA. In considering such a motion, the court draws every inference in the light most favorable to Winterstein and determines whether CrossCheck can demonstrate the absence of any issues of material fact requiring trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). After considering the evidence submitted by each party, the court concludes CrossCheck has not carried its burden and denies CrossCheck's motion.



## FACTS

Defendant CrossCheck is a computer information company that provides check authorization services. (Affidavit of John J. Kieley, IV, Vice President of Consumer Relations and Legal Affairs for CrossCheck ¶ 4, Ex. C to Defendant's Rule 56.1(a)(3) Statement [hereinafter "Def. Rule 56.1(a)(3) St."].)[1] Under its standard application/service agreement, CrossCheck contracts with retail merchants who receive and accept checks from their customers. (*Id.* ¶ 5.) When a customer presents a check to the merchant, the merchant contacts CrossCheck for authorization. (Kieley Dep., at 25-27, Ex. C to Plaintiff's Local Rule 56.1(b)(3)(B) Statement [hereinafter "Pl. Rule 56.1(b)(3)(B) St."]) CrossCheck then consults its comprehensive information base which estimates the probability that the check the customer is presenting will clear the bank.[2] (Kieley Aff. ¶ 6.) If CrossCheck's database shows that information relative to the check (including, for example, the face amount of the check, the date it was issued, and the magnetic ink character recognition numbers on the bottom of the check) falls within an "acceptable statistical range,"

---

[1] CrossCheck labels its statement of undisputed facts as "Defendant's 12(m) Statement." That designation in the Northern District of Illinois has been amended, and a party's statement of facts in a summary judgment motion is now called the "Rule 56.1(a)(3) Statement." All references herein to "Def. Rule 56.1(a)(3) St." are to the document filed as "Defendant's 12(m) Statement."

[2] In his deposition, John Kieley stated that he was unsure how CrossCheck's information base was originally developed and, when asked to explain how the database estimates the probability that the check a merchant is accepting will clear the bank, Kieley could say only that he believed there were "statistical models" loaded into the database. (Kieley Dep., at 25.)

CrossCheck issues the merchant an approval number for placement on the check.[3] (Kieley Dep., at 28.)

In the event a merchant accepts a check approved by CrossCheck and the check is dishonored, CrossCheck pays the merchant the face amount of the check. The application/service agreement sets forth a "Submission Time Frame," which requires the merchant to "mail any dishonored checks covered under [the] agreement and all additional paperwork to Check Center [CrossCheck] within 30 calendar days of the approval date." (Ex. A to Kieley Aff.) If a merchant wishes to be reimbursed for a dishonored check, the merchant is required to mail the dishonored check to CrossCheck after the merchant's bank returns the dishonored check to the merchant. (Kieley Dep., at 53.) Upon receipt of a dishonored check, CrossCheck creates a claim by entering the name and address of the check writer, as well as the magnetic ink character recognition number of the check, into the CrossCheck computer system. (*Id.*, at 54.) CrossCheck then attempts to re-deposit the check. (Kieley Aff. ¶ 18.) While Kieley stated that he "believes" the checks CrossCheck attempts to re-deposit are endorsed over to CrossCheck (Kieley Dep., at 54), he was uncertain; and it is undisputed that the check involved in this case was not in fact endorsed over to CrossCheck. (*Id.* at 55.) Approximately forty percent of all dishonored checks resubmitted by CrossCheck clear when re-deposited by CrossCheck. (Kieley Aff. ¶ 19.)

---

[3] Additionally, under the "Floor Plan" provision of CrossCheck's standard application/service agreement, checks under a certain amount are automatically approved. (Kieley Dep., at 27.) The merchant then mails checks covered under the floor plan to CrossCheck on a weekly basis for authorization. (*Id.*)

Only if CrossCheck's attempt to re-deposit a dishonored check fails does CrossCheck take any further action to collect on a debt. (*Id.* ¶ 21.) Approximately seven percent of CrossCheck's employees are engaged in direct recovery or collection activities,[4] and around six percent of CrossCheck's total expenses are allocated to recovery or collection efforts. (*Id.* ¶¶ 11-12.) The record does not indicate to what the remaining ninety-four percent of CrossCheck's expenses are devoted.

In October 1996, CrossCheck and C & P Auto Service Center, Inc. d/b/a Chuck's Firestone[5] (hereinafter "Firestone") entered into an application/service agreement (hereinafter the "Agreement"). (*Id.* ¶¶ 13-14.) On February 16, 2000, Plaintiff William Winterstein took his truck to Firestone, in Joliet, Illinois, for a tune-up. (Pl. Rule 56.1(b)(3)(B) St. ¶ 1.) Winterstein paid for the service with a personal check in the amount of $93.72. (*Id.*) Firestone immediately contacted CrossCheck to determine whether it should accept Winterstein's check. (Def. Rule 56.1(a)(3) St. ¶ 23.) After reviewing its database, CrossCheck determined that Winterstein's check fell within acceptable standards, and Firestone accepted the check. (*Id.* ¶ 24-26.) Firestone then endorsed the check and deposited it into Firestone's account at Financial Federal Trust and Savings Bank, Joliet,

---

[4] In his deposition, John Kieley stated that the actual percentage of CrossCheck employees that engage in direct recovery or collection efforts was closer to five percent. (Kieley Dep., at 31.) Kieley arrived at this five percent figure by estimating that there were around 400 to 420 employees at CrossCheck, about twenty of whom were engaged in direct collection activities. (*Id.*, at 31-32.)

[5] In February 1999, C & P Auto Service Center, Inc., changed its d/b/a to Angelo's Firestone. (Kieley Aff. ¶ 15.)

Illinois. (Pl. Rule 56.1(b)(3)(B) St. ¶ 2.) Dissatisfied with Firestone's work and unable to obtain satisfaction from Firestone, Winterstein contacted his bank and stopped payment on the check. (*Id.* ¶ 1.) The check was first dishonored on or about February 18, 2000. (Kieley Aff. ¶ 29.)

Firestone then mailed the dishonored check to CrossCheck, and CrossCheck, pursuant to the warranty provision of the Agreement, reimbursed Firestone for the amount of Winterstein's approved check, $93.72. (*Id.* ¶¶ 30-31.) On March 24, 2000, CrossCheck sent Winterstein a letter stating that CrossCheck had all right, title, and interest in the dishonored check and requested payment in the amount of $93.72. (*Id.* ¶ 32.) Winterstein asserts that the form of this letter violates Section 1692g of the FDCPA, which requires a debt collector to provide a consumer with notice that the consumer has thirty days to request, in writing, that the debt collector provide proof of the debt's validity to the consumer. Specifically, the letter from CrossCheck to Winterstein included statements that "IT IS IMPERATIVE THAT YOU GIVE THIS MATTER YOUR IMMEDIATE ATTENTION" and that CrossCheck is "LEGALLY ENTITLED" to the debt, language that Winterstein alleges overshadows the thirty-day validation notice required by the Act. CrossCheck believes that it is entitled to summary judgment because it does not qualify as a "debt collector" under the FDCPA.

## DISCUSSION

The Fair Debt Collection Practices Act imposes civil liability only on "debt collectors." 15 U.S.C. § 1692k. The FDCPA defines debt collector generally as "any person

who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Act then lists numerous exceptions to this general definition. *See id.* § 1692a(6)(A)-(F). CrossCheck contends it is not a debt collector under several theories. The court addresses each argument below.

## A. The Creditor Exception

CrossCheck first contends that it is a creditor within the Act and therefore excluded from the definition of debt collector. (Defendant's Memorandum of Law in Support of its Motion for Summary Judgment [hereinafter "Defendant's Memorandum"], at 3.) The FDCPA specifically excludes from the definition of debt collector "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1692a(6)(A). The legislative history of the FDCPA establishes that the Section 1692a(6)(A) exclusion includes both creditors themselves and their employees. *See Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1484 (M.D. Ala. 1987) (citing S. Rep. No. 95-382, 95th Cong. 1st Sess., *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698). The FDCPA defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed," but the Act goes on to explain that the term creditor "does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4).

CrossCheck contends that it is a creditor within the meaning of the Act, but the court notes that the original debt here was owed to Firestone, not CrossCheck: Winterstein's check was negotiated by Firestone, and the check was initially deposited into Firestone's account at Financial Federal Trust and Savings Bank, as opposed to an account controlled by CrossCheck. (Kieley Dep., at 47-48.) Congress intended the FDCPA to protect borrowers from "*third persons* who regularly collect debts for others." S. Rep. No. 95-382, 95th Cong. 1st Sess., *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697 (emphasis added). CrossCheck is a third party collecting a debt that was originally owed to Firestone. Although CrossCheck, like other check authorization services, "may facilitate the transactions of its subscribers, it is not in the business of extending credit." *Holmes v. Telecredit Serv. Corp.*, 736 F. Supp. 1289, 1293 (D. Del. 1990). *Holmes* involved a check authorization service, Telecredit, that, like CrossCheck, used a computer database to advise its merchant subscribers on whether to accept or decline a consumer's check. 736 F. Supp. at 1290. Telecredit also entered into agreements with its subscribers to purchase checks authorized by Telecredit that later defaulted. *Id.* In a case challenging Telecredit's practices under FDCPA, the *Holmes* court concluded that Telecredit could not "escape the spirit of the [FDCPA] merely by the technicality of purchasing the debt upon default so that title technically rests in itself." 736 F. Supp. at 1293.

The assignee exception to the Act's definition of creditor found in § 1692a(4) specifically applies in this context. *Id.* Winterstein's check was not assigned to CrossCheck until after Winterstein stopped payment on the check. Therefore, CrossCheck is not a

creditor within the meaning of the FDCPA because it received an assignment of a debt in default.

CrossCheck attempts to propel itself out of the assignee exception by arguing that it received an assignment of Winterstein's check before the check was in default at the time of sale. CrossCheck bases this argument on language contained in the following two provisions in the Agreement with Firestone:

> CHECK ACCEPTANCE: . . . Upon YOUR STORE(s)' acceptance, YOUR STORE(s) hereby assigns all right, title and interest in and to all checks covered under this Agreement.
>
> * * *
>
> DEPOSIT TIME FRAME: All checks covered under this Agreement shall be deposited on Check Center's [CrossCheck's] behalf to YOUR STORE's bank account on or before the third (3rd) business day following the day of encashment by YOUR STORE(s).

(Ex. A to Kieley Aff.)

To the extent these two provisions purport to create a valid assignment at the time of sale, however, the court believes this is an effort to exalt form over substance. An assignment is defined as the "transfer by a party of *all* of its rights to some kind of property, usually intangible." BLACK'S LAW DICTIONARY 109 (5th ed. 1979) (emphasis added). As mentioned above, Winterstein's check was negotiated by Firestone and deposited into Firestone's own bank account (Kieley Dep. at 47-48), not the account of CrossCheck, its purported owner. Additionally, CrossCheck did not come into possession of Winterstein's check until Firestone mailed it to CrossCheck, after Firestone's own

-8-

unsuccessful attempt to cash the check. (Kieley Aff. ¶ 30.) CrossCheck, then, had neither control nor possession of the check prior to the time Winterstein stopped payment. Accordingly, this court finds it impossible to conclude that CrossCheck obtained *all* rights to the check at the time of sale and therefore refuses to hold that a valid assignment took place at the time of the transaction.[6]

*Whitaker v. Ameritech Corp.*, 129 F.3d 952 (7th Cir. 1997) and *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996), cited by CrossCheck, are distinguishable. In both of those cases, the court held that an assignment took place *before* the debts were in default. In *Whitaker*, the defendant telephone company collected money owed to long distance companies and information providers. 129 F.3d at 954. The *Whitaker* court concluded that the defendant did not acquire the debts after the debts were in default. *Id.* at 959. Rather, the court noted that the defendant acquired the debts, according to contracts with the long distance and information providers, at the moment each telephone call was placed, well before the debts could possibly be in default. *Id.* In *Wadlington*, the defendant loan servicing company received an assignment of retail installment sales contracts on automobiles from the automobile dealer. 76 F.3d at 103. The customer made payments directly to defendant, not to the dealer, and the contracts were transferred to the

---

[6] For the same reason, CrossCheck fails in its attempt to invoke the exclusion set forth in Section 1692a(6)(F)(iii) of the FDCPA. That section excludes from the definition of debt collector "any person collecting or attempting to collect any debt owed or due another to the extent such activity ... (iii) concerns a debt which is not in default at the time it was obtained by such person." As noted above, the court concludes the assignment to CrossCheck took place after the debt was already in default.

defendant at the time of sale, before any default. *Id.* at 104. CrossCheck, in contrast, is not a creditor within the meaning of Section 1692a(4) because CrossCheck was assigned the debt only after the debt was in default.

## B.     The Origination Exception

CrossCheck next argues that CrossCheck is excluded from the definition of debt collector because CrossCheck "originated" Winterstein's debt. (Defendant's Memorandum, at 8.) The FDCPA excludes from the definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (ii) concerns a debt which was originated by such person." 15 U.S.C. § 1692a(6)(F)(ii). Telecredit, the defendant check authorization service in *Holmes*, made a similar argument, but the court was unmoved. Telecredit contended that it was excluded from the definition of debt collector because it originated debts by providing merchants with information about checks presented to merchants. *Holmes*, 736 F. Supp. at 1293. The *Holmes* court reasoned, however, that Telecredit did not participate in the origination of the plaintiff's debt because Telecredit had no direct interaction with the consumer, did not negotiate the terms of the transaction, and did not investigate the plaintiff's assets or his ability to cover the amount of the check. *Id.* Rather, Telecredit "merely stated that it had no record of prior dishonored checks written by [the plaintiff]." *Id.*

Like Telecredit, CrossCheck merely estimates the probability that the check a merchant is accepting is a good check and then provides the merchant with that

information. (Def. Rule 56.1(a)(3) St. ¶¶ 8-9.) "Although this information facilitated the transaction" between Winterstein and Firestone, CrossCheck "did not participate in the exchange." *Holmes*, 736 F. Supp. at 1293. Accordingly, the origination exception does not apply to CrossCheck, and CrossCheck is not excluded from the definition of debt collector under the FDCPA.

C.      **The General Definition of Debt Collector**

Finally, CrossCheck claims that it does not fall within the general definition of debt collector. (Defendant's Memorandum, at 10.) The FDCPA defines "debt collector" generally as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). CrossCheck contends that CrossCheck is neither principally in the business of debt collection nor regularly collects debts. (Defendant's Memorandum, at 10.)

There appears to be no dispute concerning the first element of the test. CrossCheck is not principally in the business of debt collection: Only seven percent of CrossCheck's employees engage in direct recovery or collection efforts, and only six percent of CrossCheck's total expenses are allocated to recovery or collection efforts. (Def. Rule 56.1(a)(3) St. ¶¶ 13-14.) Nevertheless, the court concludes there is a dispute concerning CrossCheck's status as a debt collector within the meaning of the FDCPA because CrossCheck arguably attempts to collect on debts owed to another on a regular basis. In

Illinois, from August 1999 to August 2000, CrossCheck attempted to collect on 2,112 checks. (*Id.* ¶¶ 33-35.) Furthermore, John J. Kieley, IV, Vice President of Consumer Relations and Legal Affairs for CrossCheck, estimated that CrossCheck spends around $2 million per year on collection efforts. (Kieley Dep., at 34-35.) In light of the evidence that CrossCheck attempts to collect on more than 2,000 checks per year and spends $2 million on debt collection efforts, there is at least a genuine dispute concerning whether CrossCheck regularly "attempts to collect . . . debts owed or due another" on a regular basis.

CrossCheck cites several cases in support of its position that it is not principally engaged in the business of debt collection and does not regularly attempt to collect on debts owed to another. Notably, each of these cases is distinguishable on its facts. In *Alexander v. Omega Mgmt., Inc.*, 67 F. Supp.2d 1052 (D. Minn. 1999), the court held that the defendant property management firm was not principally a debt collector despite the fact that the defendant periodically collected past due assessments from tenants. 67 F. Supp. at 1055. The court reasoned that collecting the assessments was only incidental to the firm's main purpose of managing and maintaining the property. *Id.* The court in *Alexander* did not address whether the property management firm *regularly* attempted to collect on debts owed to another because both parties agreed that the firm was only attempting to collect on debts owed to the firm itself. Similarly, in *Griffin v. Bailey & Assocs.*, 855 F. Supp 1047 (E.D. Mo. 1994), the court held that the defendant resort operator was in the principal business of developing and operating resorts despite the fact that defendant periodically collected on past due accounts. 855 F. Supp. at 1048. The court in *Griffin*, like the court in

- 12 -

*Alexander*, did not address whether the resort operator *regularly* attempted to collect on debts owed to another because the resort operator was only attempting to collect on debts owed to the resort operator itself.

Finally, in *Meads v. Citicorp Credit Servs.*, 686 F. Supp. 330 (S.D. Ga. 1988), the court held that the defendant was excluded from the FDCPA because the defendant was collecting debts for a creditor related by corporate control, that defendant serviced only the accounts of corporate affiliates, and that all of defendant's correspondence clearly identified defendant with the creditor parent corporation. 686 F. Supp. at 334. These facts placed the defendant in *Meads* within the Section 1692a(6)(B) exception of the FDCPA which states that the term debt collector does not include:

> [A]ny person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.

15 U.S.C. § 1692a(6)(B). The *Meads* court held that the defendant in that case was not a debt collector because the defendant fell within the 6(B) exception and not, as CrossCheck urges, because the defendant did not principally or regularly engage in the collection of debts based upon the percentage of defendant's total expenses that defendant dedicated to collection efforts. 686 F. Supp. at 334. CrossCheck has made no claim of any common ownership or corporate affiliation with Firestone, and the 6(B) exception is unavailable here.

## CONCLUSION

There are disputes of material fact concerning CrossCheck's status as a "debt collector" under the FDCPA. Accordingly, CrossCheck's motion for summary judgment (Doc. No. 7-1) is denied.

ENTER:

Dated: June 13, 2001

REBECCA R. PALLMEYER
United States District Judge